# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JARED MICHAEL SMITH, #K58441** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 3:21-cv-00097-SMY |
| | ) |
| **A. KUFORIJI,** | ) |
| **DAVE WHITE,** | ) |
| **TRAVIS BAYLER,** | ) |
| **CONNIE HOUSTON,** | ) |
| **LESLIE KLUGE,** | ) |
| **BRADLEY SHIELDS,** | ) |
| **S. STEVENS,** | ) |
| **TAMMY STEVENS,** | ) |
| **TAYLOR DOUGLAS,** | ) |
| **MISTY FORWE,** | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| **PENNY GEORGE,** | ) |
| **ALDRIDGE,** | ) |
| **WEBB,** | ) |
| **ROB JEFFREYS,** | ) |
| **MATTHEW SWALLS,** | ) |
| **TERRY GRISSOM,** | ) |
| **HEATHERLY,** | ) |
| **SARAH ROBERTSON,** | ) |
| **LOUIS SHICKER,** | ) |
| **CALDWELL,** | ) |
| **KIMBERLY BIRCH,** | ) |
| **S. LANE,** | ) |
| **J.B. PRITZKER, and** | ) |
| **JEFFERY BROWN,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jared M. Smith, an inmate of the Illinois Department of Corrections currently incarcerated at Vienna Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  This case is now before the Court for

preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1):

### *Chest pain – June 24, 2019*

Plaintiff had chest pain on June 24, 2019 and was taken to the health care unit (HCU). Nurse Brown told him to fill out a money voucher before he could be treated. Plaintiff stated he was in too much pain to do that and it could be done later. Nurse Brown then pulled out a refusal form and directed Plaintiff to either sign the refusal or the money voucher. Plaintiff signed the money voucher and Nurse Brown then pulled out more paperwork. In a panic, Plaintiff looked at security officers and said do you see this, I need help. Nurse Brown said "that's it, go back out to the waiting area, I'm writing you a ticket." Plaintiff returned to the waiting area.

While Plaintiff was sitting in the waiting area, another nurse came and took Plaintiff to have an EKG. The EKG showed his blood pressure was 136/94, possible left atrial enlargement, left axis deviation, and incomplete right handle branch block. He was taken to an exam room and Nurse Brown took his blood pressure, which was 157/94. Nurse Brown falsified the record stating that Plaintiff complained of left clavicular pain at a level of 3, which comes and goes. Plaintiff was sent back to his housing unit without any treatment for his condition. A day or two later he told Dr. Birch about the situation and she did nothing. Plaintiff has not seen a doctor or specialist to ascertain the true condition of his heart, which is ongoing.

### *Chest pain – June 27-30, 2020*

Plaintiff submitted a nurse sick call slip on June 27, 2020 stating he was experiencing sharp,

scary pains in his chest and requesting an EKG. Two days later, he was seen by Nurse Practitioner (NP) Stevens in the HCU. He described his symptoms and expressed his concerns. She stated his issues were not related to his heart but were muscular and gave him Tylenol. He informed her that he was already taking Tylenol multiple times a day for a toothache and back pain and again requested an EKG. She told him the EKG would be normal. He explained the symptoms had persisted for over a month. NP Stevens told Plaintiff an appointment would be made for an EKG. He has had heart issues since June 24, 2019 and has not seen a cardiologist even when more than one EKG has shown possible stroke or heart attack. Dr. Birch was on-site on June 27, 2020 and NP Stevens made her aware of Plaintiff's presence and his health concerns but she did nothing.

Plaintiff filed an emergency grievance about the June 27, 2020 nurse sick call visit which was granted expedited review by the Chief Administrative Officer (CAO). However, Counselor Lane impeded the expedited review by holding the grievance until she could give a counselor's response, when the grievance should have gone directly to the grievance officer in accordance with emergency grievance procedures. This delayed any possible help Plaintiff could have received.

Plaintiff was given an EKG by Nurse Forwe on June 30, 2020. He had to wait two hours in the HCU before it was done. He told Nurse Forwe he did not trust her to perform the EKG because she had previously switched his results. Nurse Linda was present and assisted with the EKG. After the first EKG, Nurse Forwe stated a second one was needed because a lead was not connected properly. Once the leads were adjusted, Nurse Forwe looked at the machine and stated "it's going to say the same thing." Nurse Forwe showed Plaintiff the first print out but refused to show him the second one causing him stress, anxiety, and making his condition worse. Nurse Linda asked why Nurse Forwe would not show Plaintiff the second result. Nurse Forwe responded "he can see it, but he'll have to go through the records office." Plaintiff was not scheduled with

anyone to discuss the results.

### *Bunk access – degenerative disc disease*

Plaintiff suffers from degenerative disc disease and acute pain in his kidney area which is common knowledge among the health care unit administrators, on-site medical directors, and medical staff. For over a year, Plaintiff's requests to Dr. Birch for a bottom bunk permit were denied. The top bunks at Vienna are over five feet in height and, due to his serious medical conditions, it is impossible for him to jump up on them. IDOC does not provide any way to access the top bunks and the stool in the cell clearly states it is not to be used as a step.

Plaintiff was assigned a top bunk on March 18, 2020 over his objections. He informed the sergeant and wing officer of his serious medical issues and that it would cause him pain to get on and off the top bunk. They told him that if he could not show them a low bunk permit, there was nothing they could do. He wrote a grievance two days later. He was in so much pain on March 29, 2020 that he had to be taken to the HCU where he was finally given a low bunk permit. However, he was not given a copy to show the correctional officers.

Plaintiff saw a nurse on September 17, 2020 for severe back pain and to request a low bunk permit. He was put in to see a doctor. He saw Dr. Caldwell the next day for a low bunk permit and increase of fiber lax. Dr. Caldwell increased the fiber lax but refused to give him a low bunk permit. Dr. Caldwell said it was over his head and showed Plaintiff a piece of paper that stated he could not receive a low bunk permit unless he was missing a limb, had seizures, was 65 or older, or weighed over 325 pounds.

Plaintiff was seen on September 23, 2020 by NP Stevens for a low bunk permit request due to his severe back and kidney pain from getting on and off the top bunk. She denied the permit stating he did not qualify because he was not missing a limb, did not have seizures, was not 65 or

older, did not weigh over 325 pounds, and could not receive it regardless of pain level or previous diagnosis.

The IDOC medical director discontinued Plaintiff's low bunk permit causing him great pain. He was seen by a nurse and Dr. Meyers for emergency back pain on October 5, 2020 at which time he could barely walk.

*Dental issue*

Plaintiff was seen by the dentist and told his teeth were fine. He was kicked out of the medical records office and healthcare by Dentist Aldridge on August 21, 2019 because Aldridge was offended by Plaintiff speaking to the female staff as he entered the records office. Later, Plaintiff experienced discomfort in his "back right tooth" and put in a nurse sick call request to see the dentist. When the dentist examined his tooth, he told Plaintiff it had a hole too large to fill and needed to be extracted. Plaintiff asked how this could have been missed the last time he was seen. The dentist just said he would schedule a time to take it out. Plaintiff was not given anything for pain or the infection. Prior to the extraction, the pain became so severe Plaintiff had to declare an emergency. He was escorted to the HCU, given orajel, Tylenol, and penicillin. The nurse, not the dentist, gave him the pain relieving orajel.

When Plaintiff went for the tooth extraction, the office was grimy and dirty and he was concerned he would get an infection. For that reason, and because he was not currently in pain, he signed a refusal. Later, the pain became unbearable again and he requested to see the dentist. The dentist gave him a shot to numb his gums and walked out to give the shot time to work. When the dentist returned, he was upset that Plaintiff was talking to the nurse. The nurse stated Plaintiff had not said anything inappropriate. Before the procedure began, the nurse told Plaintiff he would feel a tug but instead he felt pushing pressure. When he felt the tool hit his gums he said a curse

word.  The dentist seemed offended by the word and indicated he was not going to proceed.  The dentist then told Plaintiff if he could feel it, they had to stop.  Plaintiff told him to go ahead and extract the tooth.  The dentist refused and told him he would be rescheduled.  The dentist did not give Plaintiff anything for pain or possible infection.  A week later, a nurse brought him oral pain reliever because he was having bad pain in his tooth.  This happened a few times.  They stopped refilling his Tylenol in September 2020 and he sent in numerous request slips asking for refills.

During the pandemic, other inmates were taken on medical furloughs for surgeries and Plaintiff could have been taken to an outside dentist.  His teeth hurt for months.  In December 2020, he put in two nurse sick call requests for orajel, Tylenol, and penicillin for his tooth pain, but did not receive a response.

NP Stevens was seeing inmates in Plaintiff's housing unit on January 4, 2021 and he asked to see her.  He told her he had an emergency situation with his tooth and was in pain.  She replied "I don't do teeth."  He asked her to help him with the pain.  He informed her that when he declared an emergency previously, he had been given orajel and penicillin.  She looked at the tooth and told him it looked painful but not infected.  Her assistant asked for his information and said the dentist would be informed.  Later, when a correctional officer called healthcare for Plaintiff, the officer reported that per NP Stevens, there was no infection and he did not need to be seen.  During med line that night, Plaintiff requested orajel and it was provided.

Plaintiff sent a request slip to the HCU on June 13, 2020 addressed to Penny George and Dr. Birch asking if an appointment had been made for him to see an outside dentist to determine the condition of his teeth because he was in great pain.  He had submitted a grievance about his dental issue, which was granted expedited review by the CAO.  Nurse Leslie Kluge, who Plaintiff suing in another case, responded to the request even though it was not addressed to her.  She stated

6

it was not an emergency, there was no need for an outside referral, he had been treated appropriately, and he would be scheduled for a follow-up with the dentist once restrictions are lifted. This response, authorized by Assistant Warden Connie Houston, stopped Plaintiff from getting help for his extreme pain. In reviewing the grievance, Grievance Officer Heatherly did not contact the health care administrator, director of nursing or dentist.

### *Hiatal hernia*

Plaintiff saw NP Stevens on August 3, 2020 for multiple medical issues including a hiatal hernia (previously diagnosed on January 15, 2020 by Dr. Jyot). It had started hurting when he swallowed while eating around June 2020 and became worse in July 2020. Plaintiff explained this to NP Stevens and stated he should have seen Dr. Jyot for a follow-up a long time ago. He requested a slow eaters permit. She refused, stating pain while swallowing was not a medical problem. While he was talking with NP Stevens, Nurse Douglas kept trying to talk to him but he ignored her. Nurse Douglas then became irritated and unprofessional. She interrupted his assessment and asked him to acknowledge her. He told her that he was there to speak to NP Stevens, not her. Nurse Douglas then left and spoke with Lieutenant Shields. She came back with Nurse Forwe. NP Stevens told him she would put him in to see Dr. Jyot for a follow-up and he might give him a slow eaters permit. He then began to tell her about other issues and Nurse Douglas interrupted and said "no, you're done, you have to go, she told you to leave." At that point, things got out of control. Nurse Forwe yelled "Mr. Smith it's time for you to leave." Every time he opened his mouth to speak, Nurse Douglas became louder as if she was being attacked, preventing NP Stevens from responding to him. Nurse Douglas then called Lieutenant Shields, who stormed in and ordered him to leave. Lieutenant Shields did not ask NP Stevens if she had a problem or if he was being disruptive or disrespectful. NP Stevens never said a word and allowed

the nurses to do whatever they wanted and end his treatment. Plaintiff was made to leave without any regard for his pain and fears. Nurse Douglas wrote him a disciplinary ticket because he would not acknowledge her. Plaintiff later discovered NP Stevens did not refer him to Dr. Jyot.

Plaintiff saw Dr. Caldwell for hiatal hernia, pain while swallowing, and pain in his left lung on January 22, 2021. He told Dr. Caldwell that since he was diagnosed by Dr. Jyot with hiatal hernia on January 15, 2020, his condition had worsened. He requested a follow-up appointment with Dr. Jyot. Dr. Caldwell disregarded his complaints and denied him a follow-up with Dr. Jyot.

### **Preliminary dismissals**

Plaintiff names A. Kuforiji, Dave White, Travis Bayler, Tammy Stevens, Webb, Rob Jeffreys, Matthew Swalls, Terry Grissom, Sarah Robertson, and J. B. Pritzker as defendants, but there are no allegations against these individuals in the statement of claim. Under Federal Rule of Civil Procedure 8, the Complaint must include a short, plain statement of the case against each individual. Merely naming a party in the caption of a Complaint is not enough to state a claim against that individual. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Further, to state a § 1983 claim, a plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Absent any allegations describing what each of these individuals did or failed to do in violation of Plaintiff's constitutional rights, claims cannot proceed against them. Additionally, to the extent Plaintiff seeks to hold any of these individuals liable as administrators or supervisors based solely on the actions of subordinate employees, the doctrine of respondeat superior (supervisory liability)

is not applicable in § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). For these reasons, Defendants A. Kuforiji, Dave White, Travis Bayler, Tammy Stevens, Webb, Rob Jeffreys, Matthew Swalls, Terry Grissom, Sarah Robertson, and J. B. Pritzker will be dismissed without prejudice for failure to state a claim.

Plaintiff names Wexford as a defendant based on allegations of unconstitutional conduct by its employees and violations of numerous provisions of the contract between Wexford and IDOC by its employees. The doctrine of *respondeat superior* does not apply to actions filed under § 1983. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). Instead, Wexford may only be held liable if it had a policy or practice that caused the alleged violation of a constitutional right. *Id.* There is no suggestion in the Complaint that Wexford maintained a policy or practice that caused a violation of Plaintiff's constitutional rights. Additionally, § 1983 protects individuals from constitutional violations, not violations of state laws, IDOC regulations and practices, or the contract between Wexford and IDOC. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003). Accordingly, Wexford will be dismissed.

Finally, Plaintiff refers to Dr. Meyers and unidentified nurses in his statement of claim, but these individuals are not named as defendants. Federal Rule of Civil Procedure 10(a) requires the names of all parties to be included in the case caption. Claims against any individuals not identified as defendants in the case caption are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005).

### Severance

Plaintiff asserts various claims that are unrelated. Thus, the Court must determine whether the claims are improperly joined and subject to severance or dismissal. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Federal Rule of Civil Procedure 20 prohibits a plaintiff from

asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607. Federal Rule of Civil Procedure 21 grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, there are at least four sets of claims. The first set relates to allegations of chest pain that was not properly treated on June 24, 2019 (Doc. 1, p. 20, Doc. 1-1, pp. 6-9) and June 27-30, 2020 (Doc. 1-1, pp. 10-13). The second set relates to allegations that he did not receive proper treatment for his hiatal hernia (Doc. 1-1, pp. 1-5). The third set relates to allegations that he did not receive proper dental care (Doc. 1-1, pp. 17-24). The fourth set relates to allegations that he was not given a low bunk permit and related issues with his degenerative disc disease and chronic back/kidney pain (Doc. 1-1, pp. 14-16). These groups of claims are unrelated, include different defendants, involve separate transactions or occurrences, and do not involve a common question of fact or law. Accordingly, consistent with *George v. Smith* and Federal Rules of Civil Procedure 20 and 21, the Court will sever the claims into separate actions. The Complaint will be subject to review under 28 U.S.C. § 1915A in each of the newly severed cases.

**Severed case #1** will include the allegations that he did not receive proper treatment for his hiatal hernia (Doc. 1-1, pp. 1-5). The Defendants are S. Stevens, Taylor Douglas, Misty Forwe, Bradley Shields, and Caldwell.

**Severed case #2** will include the allegations that he did not receive proper dental care and any related grievance issues (Doc. 1-1, pp. 17-24). The Defendants are Aldridge, S. Stevens,

Penny George, Dr. Birch, Leslie Kluge, Connie Houston, and Heatherly.

**Severed case #3** will include the allegations that he was not given a low bunk permit and related issues with his degenerative disc disease and chronic back/kidney pain (Doc. 1-1, pp. 14-16). The Defendants are Dr. Birch, Dr. Caldwell, S. Stevens and Louis Shicker.

The allegations of chest pain that was not properly treated on June 24, 2019 (Doc. 1, p. 20, Doc. 1-1, pp. 6-9) and June 27-30, 2020 (Doc. 1-1, pp. 10-13) and any related grievance issues will remain in this case; the defendants are Jeffery Brown, Kimberly Birch, S. Stevens, S. Lane, and Misty Forwe.

### *In forma pauperis* motion

Before screening the claims remaining in this lawsuit, the Court must address Plaintiff's motion for leave to proceed *in forma pauperis* ("IFP") (Doc. 2) seeking leave to proceed in this case without prepayment of the Court's usual $402.00 filing fee in a civil case. *See* 28 U.S.C. § 1914(a). Under 28 U.S.C. § 1915(g), a prisoner is prohibited from bringing a civil action or appealing a civil judgment IFP, "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." *See* 28 U.S.C. § 1915(g).

Public records reveal that Plaintiff incurred three "strikes" within the meaning of 28 U.S.C. § 1915(g) before filing this case: *Smith v. Roberson*, Case No. 17-cv-3092-JES (C.D. Ill. dismissed Sept. 21, 2017); *Smith v. Walsh*, Case No. 17-cv-3105-JES (C.D. Ill. dismissed Sept. 21, 2017); and *Smith v. City of Danville*, Case No. 17-cv-2323-CSB (C.D. Ill. dismissed Jan. 5, 2018). Because Plaintiff has three "strikes" for purposes of Section 1915(g), he may not proceed IFP in

this case unless he is under imminent danger of serious physical injury.

"Imminent danger" within the meaning of 28 U.S.C. § 1915(g) requires a "real and proximate" threat of serious physical injury to a prisoner. *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (citing *Lewis v. Sullivan*, 279 F.3d 526, 529 (7th Cir. 2002)). "Allegations of past harm do not suffice" to show imminent danger; rather, "the harm must be imminent or occurring at the time the complaint is filed," and when prisoners "allege only a past injury that has not recurred, courts deny them leave to proceed IFP." *Id*. at 330 (citing *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996)).

Plaintiff's claims relate to allegations of past harm – the denial of medical care for chest pain in June 2019 and June 2020.  He does not describe any chest pain issues from June 2020 to present.  He states only that he has not seen a cardiologist and the "condition is on-going."  Moreover, he provides not information regarding the severity, frequency, duration, or recency of any chest pain or his attempts to obtain treatment necessary to establish imminent danger of serious physical injury.  As such, the IFP motion will be denied and Plaintiff must pay the full filing fee.

## Disposition

Defendants A. Kuforiji, Dave White, Travis Bayler, Tammy Stevens, Webb, Rob Jeffreys, Matthew Swalls, Terry Grissom, Sarah Robertson, and J. B. Pritzker are **DISMISSED without prejudice** and the Clerk of Court is **DIRECTED** to **TERMINATE** them as Defendants.

The following claims are severed:

**Severed case #1** includes the allegations that Plaintiff did not receive proper treatment for his hiatal hernia (Doc. 1-1, pp. 1-5). The Defendants are S. Stevens, Taylor Douglas, Misty Forwe, Bradley Shields, Caldwell.

**Severed case #2** includes the allegations that Plaintiff did not receive proper dental care

and any related grievance issues (Doc. 1-1, pp. 17-24).  The Defendants are Aldridge, S. Stevens, Penny George, Kimberly Birch, Leslie Kluge, Connie Houston, and Heatherly.

**Severed case #3** includes the allegations that Plaintiff was not given a low bunk permit and related issues with his degenerative disc disease and chronic back/kidney pain (Doc. 1-1, pp. 14-16).  The Defendants are Kimberly Birch, Caldwell, S. Stevens, and Louis Shicker.

In each newly-severed case, the Clerk of Court is **DIRECTED** to file the following documents:

1) The Complaint (Doc. 1);

2) The Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2);

3) This Memorandum and Order Severing Case.

The **only claims remaining in this action** are the allegations of chest pain that was not properly treated on June 24, 2019 (Doc. 1, p. 20, Doc. 1-1, pp. 6-9) and June 27-30, 2020 (Doc. 1-1, pp. 10-13) and any related grievance issues.  The Defendants remaining in this case are Jeffery Brown, Kimberly Birch, S. Stevens, S. Lane, and Misty Forwe and the Clerk of Court is **DIRECTED** to **TERMINATE** all other Defendants from this case.  The Court will enter a separate screening order for the remaining claims pursuant to 28 U.S.C. § 1915A as soon as practicable after the filing fee is paid.

Plaintiff's motion for leave to proceed IFP in this case (Doc. 2) is **DENIED**.  Plaintiff must pay the full filing fee of $402 for this lawsuit within thirty days of the date of this Order.  If Plaintiff fails to comply with this Order in the time allotted by the Court, this case will be dismissed. *See* FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051, 1056-57 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466, 468 (7th Cir. 1994).

Plaintiff is ADVISED that he is under a continuing obligation to keep the Clerk of Court

informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 1, 2021**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**